**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Jillian Vogel, | No. CV-25-03066-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Exocel Bio Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant Raj Jayashankar ("Jayashankar") and Defendant Exocel Bio, Inc.'s ("Exocel") Motion to Dismiss or in the Alternative Defendant Exocel's Motion to Transfer. (Doc. 5). Because Plaintiff Jillian Vogel ("Plaintiff") has consented to dismiss Jayashankar (Doc. 6 at 1 n.1), Jayashankar's Motion to Dismiss is granted. As such, only Exocel's Motion to Dismiss and alternative Motion to Transfer remain at issue. For the reasons discussed below, both of Exocel's motions are denied.

## BACKGROUND

Plaintiff, an Arizona resident, began working as a national sales consultant for Exocel in 2020, pursuant to a Consulting Agreement. (Doc. 1-1 at 4-5; Doc. 8-1 at 3). Exocel, a Delaware corporation, is a skincare product provider with its principal place of business in Pennsylvania. (Doc. 1-1 at 4-5; Doc. 5 at 2). At the time Plaintiff was hired, Exocel's principal place of business was California, before it moved its headquarters to Pennsylvania in 2022. (Doc. 1-1 at 4-5; Doc. 5 at 2). Exocel is not registered to do business

in Arizona and only pays a small amount of taxes in the state. (Doc. 5-1 at 3). Since its move to Pennsylvania, all major company functions, including management of personnel and internal company administration, take place in Pennsylvania. (Doc. 5 at 2; Doc. 5-1 at 2).

When Plaintiff was hired, Exocel knew that she lived in Arizona and would be working from Arizona. (Doc. 6-1 at 1). Because it allows sales consultants to work remotely from any state, Exocel "does not specifically recruit employees in Arizona." (Doc. 5-1 at 3; Doc. 8-1 at 2). Nonetheless, at all relevant times, Plaintiff worked for Exocel from Arizona. (Doc. 1-1 at 5). But because Exocel does not own or lease any real property, does not have a mailing address, and "does not have a substantial presence of employees or contractors in Arizona," Plaintiff did not use an Exocel "office in Arizona" and "did not hold regular in-person meetings with other Exocel . . . staff in Arizona." (Doc. 5-1 at 3; Doc. 8-1 at 3).

Under the terms of her Consulting Agreement, as a national sales consultant, Plaintiff was entitled to twenty percent commission on most sales. (Doc. 1-1 at 5). Further, in the event that Exocel terminated the Agreement, Plaintiff would "receive commissions for up to 90 days after the last day of contracted services." (*Id.* at 6).

Though Plaintiff was initially hired as a sales consultant, Exocel eventually hired Plaintiff to be its Vice President ("VP") of Sales and Marketing, paying her $6,000 per month on top of her commission. (*Id.* at 5). In her VP role, Plaintiff "served as the face of Exocel to customers and leads." (*Id.*). Plaintiff was responsible for its "business strategies, marketing techniques, promotional strategy, and product designs[;] spearheading email campaigns, evaluating results[;] . . . working with potential partners and customers on behalf of Exocel," and "develop[ing] and manag[ing] [its] team of sales representatives," with whom she worked closely. (*Id.*). "Any work that [Plaintiff] performed for Exocel . . . concerning the development and management of [its] other . . . sales representatives was not dependent on the location in which she was physically present because [its] sales consultants are located across the United States." (Doc. 8-1 at 3).

- 2 -

While serving as VP of Sales and Marketing, Plaintiff continued to work as a sales consultant, selling Exocel's products around the country—including in Arizona. (Doc. 6-1 at 2; Doc. 8-1 at 2). To make these sales, she regularly met with existing and potential customers in Arizona. (Doc. 6-1 at 2). Exocel "regularly sold and shipped [its] products to its customers in Arizona," with sixty-one of its more than 1,000 customer accounts located in the state. (Doc. 6-1 at 2; Doc. 8-1 at 3). Exocel also shipped its products to Plaintiff's home in Arizona "for legitimate business purposes," as "approved and authorized by Exocel."[1] (Doc. 6-1 at 2). Plaintiff herself delivered some of these products. (*Id.*). In 2024, eighty-three percent of Exocel's sales came from customers outside of Arizona (Doc. 8-1 at 2), though its "largest customer was an Arizona company"[2] (Doc. 6-1 at 2). Plaintiff also attended industry conferences hosted in Arizona by medical and cosmetic organizations. (*Id.*).

Plaintiff met with Alejandro Contreras, one of Exocel's founders who lived in Arizona while she worked for Exocel, several times. (*Id.*). Contreras did not have an active operational or management role at Exocel (Doc. 8-1 at 4) but introduced her to other Exocel sales consultants in Arizona. (Doc. 6-1 at 2).

On May 30, 2024—at the direction of Jayashankar, Exocel's Principal Owner—Patrick Retif, its former Chief Executive Officer ("CEO"), emailed Plaintiff to inform her that Exocel would no longer engage in marketing and would therefore "pause" her $6,000 monthly rate for her VP position. (Doc. 1-1 at 4-6). After she received the email, however, Plaintiff spoke to Jayashankar, who agreed that Exocel "would keep [Plaintiff] employed as Vice President of Sales and Marketing." (*Id.* at 6).

---

[1] Exocel disputes this, asserting that it never sent Plaintiff its products for legitimate business purposes and accusing her of the theft of over $2,000,000 worth of its products. (Doc. 8-1 at 3-4). However, all conflicts between facts asserted in the parties' affidavits are resolved in favor of Plaintiff. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 688 (9th Cir. 1996)).

[2] Exocel also disputes this, asserting that its "single largest customer was located outside of Arizona." (Doc. 8-1 at 3). Again, this conflict must be resolved in Plaintiff's favor. *Rio Props.*, 284 F.3d at 1019 (citing *AT&T*, 94 F.3d at 688).

On July 8, 2024, Plaintiff sent Exocel a letter of resignation, stepping down from her VP position, effective July 15, 2024. (*Id.*). The letter did not include a resignation from her role as a sales consultant. (*Id.*). Nonetheless, on July 14, 2024, Plaintiff was locked out of her company email and customer management software. (*Id.*). Plaintiff alleges that, by locking her out, Exocel "effectively terminated the Consulting Agreement." (*Id.*).

Between June 1, 2024, and July 15, 2024, Plaintiff earned $9,000 in salary from her VP role ("Salary Payment"). (*Id.* at 7). While her June commission was $54,322.00 ("June Commission"), Plaintiff does not know her July commission because she no longer has access to her company accounts ("July Commission"). (*Id.* at 6-7). Plaintiff does know, however, that Exocel "awarded all sales employees and consultants an additional ten . . . percent commission for sales made during July 2024." (*Id.* at 6). And during the six months prior to the alleged termination, Plaintiff earned an average of $28,689.77 in commission. (*Id.* at 7). Exocel has not paid Plaintiff her June Commission, her July Commission, or her Salary Payment. (*Id.* at 6-7).

In September 2024, Exocel filed a lawsuit against Plaintiff in the Eastern District of Pennsylvania, alleging related claims for, among other things, breach of contract, theft of its products, and unlawful use of its trade secrets and confidential information ("Pennsylvania Suit"). (Doc. 5 at 4 (citing *Exocel Bio, Inc. v. Retif & Vogel*, No. 2:24-cv-05202 (E.D. Pa. Sep. 2024); Doc. 5-2). The Pennsylvania Suit is ongoing. (Doc. 5 at 4; Doc. 8-1 at 4).

Plaintiff filed her Complaint in the Arizona Superior Court on May 14, 2025, which Exocel removed on August 22, 2025. (Doc. 1; Doc. 1-1). In her Complaint, Plaintiff alleges three Counts related to her employment with Exocel: (1) Failure to Pay Minimum Wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; (2) Failure to Pay Minimum Wage under the Arizona Minimum Wage Act, A.R.S. § 23-362 et seq.; and (3) Failure to Pay Wages under the Arizona Wage Act, A.R.S. § 23-350 et seq. (Doc. 1-1 at 7-10).

**DISCUSSION**

## I.    Personal Jurisdiction

Exocel asks the Court to dismiss Plaintiff's suit under Federal Rule of Civil Procedure 12(b)(2), for a lack of personal jurisdiction.  (Doc. 5 at 1).  For the reasons discussed below, the motion is denied.

### A.    Legal Standard

In a motion to dismiss for lack of jurisdiction, the "party . . . invok[ing] the court's jurisdiction bears the burden of establishing that jurisdiction exists."  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  To avoid dismissal, a plaintiff "need make only a prima facie showing of jurisdictional facts"—by "demonstrat[ing] facts that if true would support jurisdiction over the defendant."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *see also Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989).  "Generally, the court may consider the pleadings as well as any declarations submitted by the parties when deciding a motion to dismiss for lack of personal jurisdiction."  *Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950, 2020 WL 3883273, at *2 (C.D. Cal. May 20, 2020) (citing *Data Disc. Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

Though a plaintiff's allegations generally "must be taken as true," a plaintiff may not "simply rest on the bare allegations of its complaint."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "[N]onspecific conclusory statement[s]," "unsupported by specific facts," cannot defeat a motion to dismiss for lack of personal jurisdiction.  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (citing *Kaylor v. Fields*, 661 F.2d 1177, 1182-83 (8th Cir. 1981)).  Further, "mere allegations of the complaint, when contradicted by affidavits," cannot "confer personal jurisdiction of a nonresident defendant."  *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).  Nonetheless, any disputes of fact between "the parties' affidavits must be resolved in [the plaintiff's] favor."  *Rio Props.*, 284 F.3d at 1019 (citing *AT&T*, 94 F.3d at 688).

To allege sufficient jurisdictional facts, the plaintiff has the burden of showing that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the exercise of jurisdiction comports with principles of due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Due process requires a nonresident defendant to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

Depending on the nature of a defendant's forum contacts, one of two types of personal jurisdiction may apply. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.5 (1985). General jurisdiction allows all actions against defendants with significant, continuous contacts with the forum state, while specific jurisdiction allows actions against defendants with minimal contacts with the forum state only if the action relates directly to those contacts. *See id.* Here, only specific jurisdiction is at issue.[3] (Doc. 6 at 4).

A defendant is subject to specific personal jurisdiction based on their forum contacts "if (1) they purposefully directed tortious activities at the forum or a resident thereof or performed some act by which they purposefully availed themselves of the privileges of conducting activities in the forum, (2) the claims arise out of or result from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Tanga.com LLC v. Gordon*, No. CV-14-01871, 2015 WL 533264, at *2 (D. Ariz. Feb. 9, 2015) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). The plaintiff "bears the burden of satisfying the first two prongs of the test." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).

---

[3] In her Response to Defendants' Motion, Plaintiff does not assert that Exocel is subject to general personal jurisdiction in Arizona.   (Doc. 6 at 4).

### B.    Analysis

#### 1.    Purposeful Availment

In the Ninth Circuit, the first prong of the specific jurisdiction test "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). The Court's decision whether to apply the purposeful availment or purposeful direction test is guided by the nature of the underlying claims. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). "The 'purposeful direction' test 'typically' applies to tort claims while the 'purposeful availment' test 'typically' applies to contract cases." *Id.* (citing *Yahoo!*, 433 F.3d at 1206). Purposeful availment applies here, as the parties both recognize (Doc. 5 at 4-9; Doc. 6 at 4-7; Doc. 8 at 5-7).

Purposeful availment "requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state. This focus on the defendant's affirmative conduct is designed to ensure that the defendant is not haled into court as the result of random, fortuitous, or attenuated contacts." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted). A defendant has engaged in affirmative conduct and thereby "purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created "continuing obligations" between himself and the residents of the forum.'" *Id.* (quoting *Burger King*, 471 U.S. at 475-76); *see Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997) (stating that "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents") (citing *Ballard*, 65 F.3d at 1498).

Here, Exocel has purposefully availed itself of the benefits of doing business in Arizona.[4] Regardless of its proportion to Exocel's total business, a customer base does

---

[4] Unlike the defendants from the cases that Exocel cites to support the proposition that a remote worker's presence in the forum state is insufficient to establish purposeful availment, *see, e.g.*, *Martinez v. N. Ariz. Univ.*, 553 F. Supp. 3d 908, 918 (D.N.M. 2021); *Hanna v. Am. Cruise Lines, Inc.*, No. 18-cv-0919, 2018 WL 3993357, at *3 (S.D. Cal. Aug.

exist for its products in Arizona.  In 2024, approximately seventeen percent of its sales came from customers in Arizona.  (*See* Doc. 8-1 at 2).  Indeed, Exocel has approximately sixty customer accounts in Arizona, including, at the time of Plaintiff's employment, its largest customer.  (Doc. 6-1 at 2; Doc. 8-1 at 3).  It regularly sells and ships products to Arizona.  (Doc. 6-1 at 2).  Though Exocel asserts that its only contact with Arizona is by nature of its relationship with Plaintiff, it "has taken deliberate action within the forum state" and "has created continuing obligations to forum residents"—by making sales, shipping products, and maintaining relationships with its Arizona customer accounts.  *Cybersell, Inc.*, 130 F.3d at 417 (citing *Ballard*, 65 F.3d at 1498).  Moreover, while Exocel "does not have a substantial presence of employees or contractors in Arizona" (Doc. 5-1 at 3), it does have other sales consultants operating in the State (Doc. 6-1 at 2) and does not claim that Plaintiff was the only exclusive point of contact between it and the Arizona customer accounts (*see* Docs. 5-1, 8-1).  Exocel therefore has affirmative, intentional, and sustained engagements with Arizona.

Accordingly, Plaintiff has made a prima facie case of purposeful availment sufficient to satisfy the first prong of specific personal jurisdiction.

**2.    Cause of Action Arising from or Related to Forum Contacts**

The second prong of specific jurisdiction may also be satisfied by one of two tests: "'arise out of' and 'relate to' are alternatives."  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504-05 (9th Cir. 2023) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361-63 (2021)).  "For a claim to arise out of a defendant's forum contacts requires causation," which can be established by "a direct nexus . . . between a defendant's contacts with the forum state and the cause of action.'" *Id.* (citation modified) (first quoting *In re*

21, 2018); *Radial Spark LLC v. Talend Inc.*, No. 23-cv-00653, 2023 WL 4105354, at *3-4 (D. Ariz. June 21, 2023), Exocel has other employees in the forum state and regularly conducts business with other residents of the forum state.  (Doc. 5-1 at 3; Doc. 6-1 at 2; Doc. 8-1 at 2-3).  Though correct that Plaintiff's presence in Arizona alone could not establish specific jurisdiction over it, Exocel focuses narrowly on its contacts with Plaintiff, Plaintiff's contacts with the forum state, and Plaintiff's contacts with other states, rather than directing its arguments to the proper inquiry: whether it has affirmatively engaged in business with the forum state beyond its relationship to Plaintiff.  *Gray*, 913 F.2d at 760 (citation omitted); (*see* Doc. 5 at 4-8; Doc. 8 at 5-8).

*W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015); and then citing *Ford*, 592 U.S. at 361-63).  In contrast, for a claim to "relate to" a defendant's forum contacts, a plaintiff need not make a prima facie case of causation.  *Id.* (citing *Ford*, 592 U.S. at 361-63).  Rather, the Court should assess whether the plaintiff has made a prima facie case of relatedness by showing that (1) the defendant's forum contacts will tend to cause "similar injuries" to those alleged;  (2) "the defendant should have foreseen the risk that its contacts might cause injuries like" plaintiff's; and  (3) there is a "close connection between [the] contacts and [the] injury."  *Id.* at 504-06 (citations omitted).

Here, Plaintiff has made a prima facie showing that her claims relate to Exocel's forum contacts.  As noted above, Exocel has a customer base in Arizona and has employees and contractors, including sales consultants, in Arizona.  (Doc. 5-1 at 3; Doc. 6-1 at 2; Doc. 8-1 at 2-3).  Under the first and second inquiries of the relatedness test, Exocel's contacts are likely to foreseeably cause similar injuries as those Plaintiff alleges.  Plaintiff's claim is based on Exocel's failure to pay her June Commission, her July Commission, and her Salary Payment. (Doc. 1-1 at 6-7). Contracting with sales representatives who live in Arizona to make sales, paid on commission, to customers (at least some of whom are based in Arizona), will foreseeably give rise to disputes involving the payment of commissions to Arizona personnel for sales to Arizona customers.

As to the third relatedness inquiry, the injuries underlying Plaintiff's claims are closely connected to Exocel's forum contacts.  Plaintiff's commission as a sales consultant at Exocel was dependent on (i.e., closely connected to) her sales—including sales made in Arizona to the customer base that Exocel has established in the state.  (Doc. 1-1 at 5). Further, her salary as VP of Sales and Marketing was closely connected to her development of the sales team, including marketing strategies, customer relationships, and the results of sales efforts—which would also have involved Exocel's Arizona sales consultants and customers.  (Doc. 1-1 at 5).

As such, Plaintiff has made a prima facie showing that her claims are related to Exocel's forum contacts, satisfying the second prong of specific personal jurisdiction.

### 3. Reasonableness of Exercising Jurisdiction

The third prong of specific personal jurisdiction is that the Court's "exercise of jurisdiction is reasonable." *Tanga.com*, 2015 WL 533264, at *2 (citing *Bancroft*, 223 F.3d at 1086). Once a plaintiff has shown that the defendant has purposefully availed itself "of the privilege of conducting business" in the forum state, "it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. Thus, unlike the other prongs of specific personal jurisdiction, the defendant bears the burden of proving that jurisdiction would be unreasonable. *Id.* at 477. To be reasonable, the exercise of jurisdiction must comport with "fair play and substantial justice." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). To "defeat jurisdiction," the defendant must "present a compelling case" against the exercise of jurisdiction. *Id.* "To evaluate reasonableness," courts "use a seven-factor balancing test," as applied below. *Freestream Aircraft Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (listing factors). Here, consideration of the relevant factors does not suggest that the exercise of jurisdiction in Arizona is unreasonable.

Extent of Defendant's Purposeful Injection into the Forum. As discussed above, Exocel has purposefully availed itself of the forum, conducting sales in this state with Arizona sales consultants and Arizona customers. (Doc. 5-1 at 3; Doc. 6-1 at 2; Doc. 8-1 at 2-3). Although this appears to be a relatively small portion of Exocel's overall business, it has had a consistent presence in Arizona for a number of years. (Doc. 8-1 at 2-3). This factor does not suggest that the exercise of jurisdiction would be unreasonable.

Burden on Defendant. Exocel argues that it would face a "substantial burden" by having to litigate in Arizona because of travel and litigation expenses. (Doc. 5 at 10). Beyond these conclusory statements, however, Exocel has presented no "evidence that the 'inconvenience is so great as to constitute a deprivation of due process.'" *Freestream*, 905

F.3d at 608 (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)).  Again, Exocel already has a market presence in Arizona.  (Doc. 5-1 at 3; Doc. 6-1 at 2; Doc. 8-1 at 2-3).  And it emphasized the convenience and familiarity of remote work.  (Doc. 8 at 5).  Indeed, "modern advances in communications and transportation have significantly reduced the burden of litigating in another forum."  *Freestream*, 905 F.3d at 608 (citation modified) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988)).  This factor does not suggest that the exercise of jurisdiction would be unreasonable.

Extent of Conflict with Another Sovereignty.  Neither party suggests that jurisdiction in Arizona would create a conflict with any other sovereignty.  (Doc. 5 at 9; Doc. 6 at 7).  As such, this factor does not suggest that the exercise of jurisdiction would be unreasonable.

Forum State's Interest in Adjudicating the Dispute.  As evidenced by its wage statutes, A.R.S. §§ 23-350 et seq., 23-362 et seq., Arizona has an interest in protecting forum wage-earners.  This factor does not suggest that the exercise of jurisdiction would be unreasonable.

Efficient Judicial Resolution of the Controversy.  Though "this factor is 'no longer weighed heavily given the modern advances in communication and transportation.'"  *Freestream*, 905 F.3d at 609 (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003)), Exocel's headquarters, operations, and witnesses are located in Pennsylvania.  (Doc. 5 at 9-10).  Plaintiff has not argued that any witnesses other than herself are in Arizona or that the underlying events occurred in Arizona.  (*See* Doc. 6 at 7).  This factor, therefore, weighs against the exercise of jurisdiction in Arizona, but has little effect on the overall balance of the factors.

Plaintiff's Interest in Convenient & Effective Relief.  Plaintiff lives in Arizona and litigation in this State would be most convenient for her.  (Doc. 1-1 at 4-5).  While this convenience for Plaintiff is marginal, the factor does not weigh against the reasonableness of jurisdiction in Arizona.

Existence of an Alternative Forum. Finally, Exocel suggests an alternative forum which Plaintiff acknowledges as a viable alternative: the Eastern District of Pennsylvania. (Doc. 5 at 10; Doc. 6 at 7). While the relative merits of litigating in the District of Arizona or the Eastern District of Pennsylvania will be addressed below, Plaintiff's acknowledgement of this available forum means that this factor weighs in favor of Exocel's arguments. *Freestream*, 905 F.3d at 609 ("Plaintiffs bear the burden of proving the unavailability of an alternative forum." (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993))).

Nonetheless, when weighed against the other factors, Exocel has not made a "compelling case" that the exercise of jurisdiction in Arizona is unreasonable.

Accordingly, each of the three prongs for specific personal jurisdiction is satisfied. Exocel is subject to personal jurisdiction in Arizona and its Motion to Dismiss for lack of personal jurisdiction is thus denied.

**II.    Transfer**

Exocel alternatively asks the Court to transfer this case to the Eastern District of Pennsylvania under either 28 U.S.C. § 1404 or 28 U.S.C. § 1631. (Doc. 5 at 1). Because 28 U.S.C. § 1631 only applies when "the court finds that there is a want of jurisdiction," that transfer statute is not applicable here given the Court's finding that Exocel is subject to specific personal jurisdiction in Arizona. As such, the Court will only consider the parties' arguments as to transfer under § 1404,[5] which allows transfer of "any civil action to any other district . . . where it might have been brought" in the interest of the parties' and witnesses' convenience.[6]  28 U.S.C. § 1404(a).

---

[5] Venue lies in the District of Arizona because the case was originally filed in the Superior Court for Maricopa County and then properly removed to this Court, which "embrac[es] the place" where the action was filed. *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665-66 (1953) ("[O]n the question of venue, Section 1391 has no application to this case because it is a removed action. The venue of removed actions is governed by 28 U.S.C. § 1441(a).").
[6] Plaintiff seems to concede that venue would lie in the Eastern District of Pennsylvania. (Doc. 6 at 7-9).  Nonetheless, the Court notes that under 28 U.S.C. § 1391(b)(1)—which provides that venue lies in "a judicial district in which any defendant resides"—venue lies in the Eastern District of Pennsylvania.  Because its principal place of business is in the Eastern District of Pennsylvania, Exocel—the only defendant in this case—is a resident of that district. *Id.* § 1391(c)(2) (a defendant entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action

Decisions regarding transfer under § 1404 are discretionary and are made on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 486 U.S. 22, 29 (1988). The moving party has the burden of showing that the action should be transferred. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). Indeed, a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Ninth Circuit has established a non-exclusive list of factors for courts to consider when deciding whether to transfer. *See Jones*, 211 F.3d at 498-99 (listing factors). Here, consideration of the relevant factors counsels against transfer.

Location Where Relevant Agreements Were Negotiated & Executed. Plaintiff and Exocel negotiated her Consulting Agreement in Arizona and California, where Exocel was headquartered at the time. (Doc. 1-1 at 4-5; Doc. 5 at 2). Because neither party seems to afford substantial weight to this factor (Doc. 5 at 12; Doc. 6 at 8), it weighs slightly against transfer.

Familiarity with Governing Law. Plaintiff's first claim is brought under federal law while her second and third claims are brought under Arizona law. (Doc. 1-1 at 7-10). The districts are equally familiar with federal law. While the District of Arizona is more familiar with Arizona law, "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 67 (2013). Moreover, it is not clear that a court in the Eastern District of Pennsylvania would need special familiarity with her Arizona claims to adjudicate them. (*See* Doc. 6 at 8-9). As such, this factor weighs slightly against transfer.

Plaintiff's Choice of Forum. A plaintiff's choice of forum is usually given great deference. *Decker Coal*, 805 F.2d at 843. Plaintiff chose to file this action in Arizona, so this factor substantially weighs against transfer.

Parties' Contacts with Forum. Exocel has significant contacts with Pennsylvania and has contacts with Arizona, as discussed above. Plaintiff, on the other hand, has

in question").

- 13 -

significant contacts with Arizona and does not appear to have any contacts with Pennsylvania outside of her past relationship with Exocel. (Doc. 8 at 8). This factor thus weighs against transfer.

Contacts Relating to the Plaintiff's Cause of Action in the Forum. Plaintiff provides a detailed description of Exocel's contacts with the forum state and makes a prima facie case that those contacts are related to her claims. (Doc. 1-1 at 7-10). Plaintiff is an Arizona wage earner, bringing two claims under Arizona laws for work completed from Arizona. (*Id.* at 4-7). Both parties thus have contacts with Arizona relating to the cause of action. The parties' contacts with Pennsylvania, however, are limited to Exocel's presence in that state. This factor, therefore, weighs against transfer.

Costs of Litigation in Each Forum. Plaintiff is an individual residing in Arizona while Exocel is a corporation headquartered in Pennsylvania. (Doc. 1-1 at 4-5). Regardless of which forum is chosen, one party will have to travel to litigate this matter. Though Exocel's travel will be more costly given its corporate form, it is an entity that is likely better situated to handle such costs than Plaintiff as an individual. Moreover, both parties have counsel in Arizona. Exocel's remaining counsel are in Tampa, Florida, and will have to travel regardless of which forum is chosen. Though the Pennsylvania Suit presents similar issues, it is not clear that transferring this case to the Eastern District of Pennsylvania would have a substantial effect on the parties' costs. As such, this factor weighs against transfer.

Availability of Compulsory Process to Compel Non-Party Witnesses. Most witnesses in this case are located in or near Pennsylvania, with the only witness located in Arizona being Plaintiff. (*See* Doc. 6 at 7). This factor favors transfer.

Ease of Access to Evidence. As noted, both Exocel's headquarters and most witnesses are located in the Eastern District of Pennsylvania. (Doc. 5 at 13). However, it seems likely—and neither party has argued to the contrary—that documentary evidence regarding Plaintiff's remote employment with Exocel will be readily available digitally from either forum. This factor only slightly favors transfer.

- 14 -

In conclusion, Exocel has not made "a strong showing of inconvenience to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal Co.*, 805 F.2d at 843. Upon weighing the relevant factors, the substantial deference given to Plaintiff's choice is not outweighed by factors which may marginally improve the convenience of litigation. Accordingly, Exocel's Motion to Transfer is denied.

**CONCLUSION**

**IT IS ORDERED** that Defendants' Motion (Doc. 5) is **GRANTED** as to Defendant Jayashankar.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 5) is **DENIED** as to Defendant Exocel.

**IT IS FURTHER ORDERED** that Exocel's alternative Motion to Transfer (Doc. 5) is **DENIED.**

Dated this 20th day of March, 2026.

G. Murray Snow
Senior United States District Judge